# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COURTNEY MCFIELDS et al., | |
| Plaintiffs, | Case No. 17 C 7424 |
| v. | |
| | Judge John Robert Blakey |
| SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Courtney McFields, Pierre Brunt, Anthony Dixon, and Walter Williams, detainees at the Cook County Jail (CCJ) filed this putative class action challenging the way in which CCJ handles health service requests from detainees complaining of dental pain. Plaintiffs claim that CCJ's policy fails to provide detainees complaining of dental pain with a face-to-face assessment by a registered nurse or higher-level practitioner. As a result, Plaintiffs claim, CCJ's policy violates the Fourteenth Amendment because it is unreasonable and reflects a deliberate indifference to pain. The case is currently before this Court on Plaintiffs' motion for class certification [84]. For the reasons explained below, the Court denies the motion.

I.   Legal Standard

To be certified, a proposed class must first satisfy all four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).  Additionally, where, as here, a Plaintiff seeks certification under Rule 23(b)(3), Plaintiff must show: (1) that issues common to the class members predominate over questions affecting only individuals, and (2) that a class action is superior to other available adjudication methods.  *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).  The Plaintiff also bears the burden of proving all of these requirements by a preponderance of the evidence.  *Priddy v. Health Care Service Corporation*, 870 F. 3d 657, 660 (7th Cir. 2017).  District Courts possess broad discretion in deciding whether to certify a class. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

II.  Background & Procedural History

   A.   Plaintiffs' Claim

Plaintiffs' complaint names as Defendants the Sheriff of Cook County and Cook County.  The Sheriff operates CCJ and is charged, together with Cook County, with providing medical care, including dental care, to CCJ detainees. [77], ¶¶ 4–6. Defendants require that detainees with dental pain complete a "health service

request form" before receiving treatment. *Id.* at ¶ 11. Plaintiffs allege that the "standard of care for processing a health service request" requires review by a registered nurse or higher-level provider and a face-to-face evaluation within 48 hours. *Id.* at ¶ 12. Plaintiffs further allege that CCJ's policies do not conform to this standard; rather, under CCJ policy, nursing staff members forward dental pain health service forms directly to dental staff without evaluating patients and without providing pain medication. *Id.* at ¶ 17. Plaintiffs allege that CCJ's failure to provide the face-to-face assessments "deviates so radically from accepted professional judgment, practice, or standards that it is not medical judgment at all." *Id.* at ¶ 15. Plaintiffs allege that CCJ has "acted unreasonably and with deliberate indifference in refusing to ensure timely screening and analgesia through nursing triage of dental complaints." *Id.* at ¶ 18.

In their amended complaint, Plaintiffs state that they planned to assert this claim on behalf of:

> All persons confined at the Cook County Jail from October 31, 2013 to the date of entry of judgment in this case who, having submitted a written complaint of dental pain, were not examined by a registered nurse or higher level practitioner within 48 hours of submission of the written complaint.

*Id.* at ¶ 41. Subsequently, they moved to certify a slightly different class:

> All persons who, while detained at the Cook County Jail between November 1, 2013 and April 30, 2018, submitted a written "Health Service Request Form" complaining of dental pain and did not receive a face-to-face assessment by a registered nurse or higher-level practitioner after submitting the request.

3

[84], p. 1. Plaintiffs, who seek only damages, seek to certify the case under Federal Rule of Civil Procedure 23(b)(3). *See* [77], p. 7.

The four named plaintiffs all fall within the proposed class. Plaintiff McFields entered CCJ on September 10, 2014. *Id.* at ¶ 20. On October 29, 2014, McFields submitted a written health service request form complaining about dental pain; the next day, a registered nurse reviewed the form and referred it to a dentist, without conducting a face-to-face assessment. *Id.* at ¶¶ 21–22. McFields submitted a second health service request form on November 14, 2014; he saw a dentist six days later, on November 20, 2014. On that date, the dentist extracted McFields' infected tooth. *Id.* at ¶¶ 23–24.

Plaintiff Brunt began experiencing dental pain at CCJ in the fall of 2016; he submitted several health service request forms and filed several grievances complaining of dental pain but did not receive a face-to-face assessment. *Id.* at ¶¶ 25–27. Brunt waited 60 days before he was finally treated by a dentist. *Id.* at ¶ 27.

Plaintiff Dixon began experiencing dental pain at CCJ in May of 2014; he submitted several health service request forms and filed several grievances complaining of dental pain but did not receive a face-to-face assessment. *Id.* at ¶¶ 28–30. Dixon, like Brunt, waited about 60 days before he was finally treated by a dentist. *Id.* at ¶ 30.

Plaintiff Williams began experiencing dental pain at CCJ in late November 2013; he submitted at least five health service request forms beginning November 30, 2013, but did not receive a face-to-face assessment. *Id.* at ¶¶ 31–33. He finally

saw a dentist on February 25, 2014. *Id.* at ¶ 32. Williams also complained about dental pain on September 17, 2014, but did not receive a face-to-face assessment; his dental pain went untreated for more than 90 days before he finally was treated by a dentist. *Id.* at ¶ 35. Williams again complained of dental pain in August of 2015; he again did not receive a face-to-face assessment and experienced untreated dental pain for more than five months before he finally was examined by a dentist. *Id.* at ¶ 37. Finally, Williams again complained of dental pain at the end of April 2016; he experienced untreated dental pain for about five weeks and was then examined by a dentist who prescribed antibiotics and an analgesic. *Id.* at ¶ 39.

Defendants oppose class certification.

B. <u>Prior Relevant Litigation</u>

Plaintiffs are not the first to challenge CCJ's policies concerning dental care. In *Smentek v. Sheriff of Cook County*, No. 09-cv-529 (N.D. Ill.), the plaintiffs (represented by the same attorneys as Plaintiffs here) sought to certify two classes, one under Rule 23(b)(2) and another under Rule 23(b)(3). Plaintiffs sought to certify a Rule 23(b)(3) class defined as:

> All Persons who, while confined at the Cook County Jail on and after January 1, 2007, made a request for treatment of dental pain and were not examined by a dentist within 7 days of that request.

*Smentek*, docket entry [49], p. 6.

Judge Lefkow, to whom that case remains assigned, initially declined to certify a Rule 23(b)(3) class on collateral estoppel grounds. *See Smentek*, docket entry [68], p. 4. Judge Lefkow determined that, in *Smith v. Sheriff of Cook County*,

5

No. 07 C 3659, 2008 WL 1995059, at *1 (N.D. Ill. May 6, 2008) and *Wrightsell v. Sheriff of Cook County*, No. 08 CV 5451, 2009 WL 482370, at *1 (N.D. Ill. Feb. 19, 2009), the courts in this district had twice previously denied certification of a Rule 23(b)(3) class in the same or very similar circumstances, compelling her to do the same. *Smentek*, docket entry [68], at pp. 4–10. Judge Lefkow later reconsidered that ruling and certified a Rule 23(b)(3) class, along with a Rule 23(b)(2) class. Later still, she decertified the Rule 23(b)(2) class and redefined the Rule 23(b)(3) class.[1] *Smentek*, No. 09 C 259, 2014 WL 7330792 (N.D. Ill. Dec. 22, 2014). Defendants appealed, and the Seventh Circuit affirmed. *See Phillips[2] v. Sheriff of Cook County*, 828 F.3d 541 (7th Cir. 2016). The Seventh Circuit's decision in *Phillips* is instructive—indeed, as explained below, it is largely dispositive.

Ultimately, the parties settled Judge Lefkow's case with respect to the Rule 23(b)(3) class, which wound up being defined as follows: "All inmates housed at Cook County Department of Corrections from January 1, 2007 to October 31, 2013 who made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of a lack of treatment." *See Smentek*, docket entry [568], pp. 9–10. Plaintiffs McFields and Dixon, who both allege untreated dental pain in 2014, would initially have been a part of the *Smentek*

---

[1] Judge Lefkow initially certified the Rule 23(b)(3) class based upon the assertion of a common question as to causation: plaintiffs attacked a policy of deliberate indifference evidenced by the decision to cut staff to a level that virtually guaranteed that adequate care would not be provided. *Smentek*, 2014 WL 7330792, at *8. Once it became apparent that Defendants had significantly increased dental staffing at the jail to within optimal range, that common question of causation no longer existed. *Id.* at *8–*9. As a result, Judge Lefkow decertified the Rule 23(b)(2) class and redefined the Rule 23(b)(3) class to reflect the time period when staffing was suboptimal.

[2] The case caption changed because Smentek died while the litigation was proceeding.

6

class.³ When Judge Lefkow redefined the class on defendants' motion to decertify, however, that changed, as they fell outside the newly-defined class' narrower timeframe. [77], ¶¶ 21–34, 28–30. As a result, Plaintiffs are not part of the *Smentek* class and seek to proceed here, picking up to some extent where *Smentek* left off.⁴

III. Discussion & Analysis

To prevail on their motion, Plaintiffs initially must demonstrate numerosity, commonality, typicality, and adequacy of representation, as well as predominance and superiority. Fed. R. Civ. P. 23(a), (b)(3). Defendants do not dispute numerosity or adequacy of representation. Accordingly, the Court begins its analysis with commonality.

A. Commonality

To satisfy the commonality requirement, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a single common question of law or fact will suffice. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2451, 2556 (2011). But not just any question will do. Because "[a]ny competently crafted class complaint literally raises common 'questions,'" for Rule 23(a)(2) purposes, Plaintiffs must show that their claims "depend upon a common contention … of such nature that it is capable of classwide resolution—which means

---

³ Though Plaintiffs do not say so, presumably Williams would also have been part of the *Smentek* class, as he alleges that he began to experience dental pain in late November of 2013. *See* [77], ¶ 31.

⁴ The staffing issues upon which the *Smentek* plaintiffs' claim was based have long been resolved, so Plaintiffs here cannot simply assert the same claim on behalf of a class defined using a later timeframe. But the claims here are similar to those asserted in *Smentek* in the sense that Plaintiffs are attacking a particular step in the process of securing medical care.

7

that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Phillips*, 828 at 550 (quoting *Dukes*, 564 U.S. at 350). While the requirement speaks of common questions, what matters to class certification is the "capacity of a classwide proceeding to generate common answers apt to drive the resolution of litigation." *Suchanek v. Sturn Foods, Inc.*, 746 F.3d 750, 756 (7th Cir. 2014). As a result, a "determination of commonality often requires a precise understanding of the nature of plaintiffs' claims." *Phillips*, 828 F.3d at 552.

Initially, Plaintiffs' complaint fails to allege whether the named Plaintiffs are pretrial detainees or convicted prisoners, describing them simply as "detainees." *See* [77], at ¶ 10. But given that CCJ houses primarily people who have not yet been convicted, the Court infers that "detainees" means "pretrial detainees."[5] As a result, to prove their claim, Plaintiffs must simply show that CCJ's practice of not providing a face-to-face assessment is objectively unreasonable. *See Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) ( citing *Kingsley v. Hendrickson*, — U.S. —, 135 S. Ct. 2466, 2475 (2015). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018).

---

[5] The language matters, as the standard of proof is different for medical claims asserted by pretrial detainees and convicted persons. *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

8

Plaintiffs allege that the CCJ had a widespread practice of failing to provide face-to-face assessments for complaints of dental pain, despite the fact that such face-to-face assessments represent the standard of care. They argue, therefore, that common questions driving the resolution of the case include (1) whether that deficiency existed, and, if yes, (2) whether that procedure was unconstitutional. But, as other courts have recognized, cases like this, "involving personal injury and inadequate medical care, are particularly fact specific." *Smith*, 2009 WL 482370 at \*2. In *Phillips*, 828 F.3d at 555, the court determined that, because the detainees "each present a different situation that involved a different type of dental pain, took place at a different time, involved different medical professionals and prison staff, and concerned a different alleged deficiency in the treatment process," "there is no common question that addresses all of the detainees' claims at once." Though all Plaintiffs here complain about a particular deficiency in the process of securing treatment (the lack of a face-to-face assessment), the other differences remain. And, as explained, the alleged common deficiency says nothing about whether the ultimate course of treatment satisfied the Constitution.

Whether the failure to provide a face-to-face assessment was objectively unreasonable necessarily depends upon the facts and circumstances disclosed in each individual health service request form. Determining that Defendants provided no assessment does not advance the resolution of the case, but simply leads to the next question: was the failure to provide the assessment (or, more generally, the care provided) in this particular case objectively unreasonable? For example, if a

9

detainee submits a health service request form, receives no assessment, but nonetheless sees a dentist within a reasonable time, the failure to provide a face-to-face assessment likely would not amount to a constitutional violation. The opposite is equally true: if a detainee submits a health service request form, receives an immediate face-to-face assessment, but receives no treatment following that assessment, the assessment does not preclude a constitutional claim. A detainee who complains of extreme pain, is immediately assessed, yet not given pain medication, is no more or less likely to win on his constitutional claim than a detainee who complains of pain, receives no assessment and no pain medication.

McFields' case proves the point: McFields alleges that he submitted a health service request form, which the nurse acted upon within one day (by referring it to a dentist). Had the nurse's referral, in turn, been acted upon with expediency, McFields could hardly be heard to complain about the lack of a face-to-face assessment. In other words, it was not the failure to provide the assessment that allegedly delayed McFields' treatment and prolonged his pain; it was the delay in the execution of the referral.

All of this is to say that the failure to provide a face-to-face assessment, by itself, is not dispositive of Plaintiff's claims, or even particularly helpful in the required analysis. Rather, consideration of Plaintiffs' claims necessarily depends upon an individualized, fact-intensive inquiry. The question of whether the individual detainees received a face-to-face assessment is just one fact to be considered among many other factors (also relevant are the nature of the

individual's complaint, the nature of the treatment provided, the timing of such treatment, any history relevant to the individual, the nature of the individual's damages, etc.). Indeed, Plaintiffs presumably would agree that the implementation of a policy requiring a face-to-face assessment, which CCJ adopted in 2018, does not necessarily bar all future claims of deliberate indifference relating to dental care.

In *Phillips*, the Seventh Circuit described two types of deliberate indifference claims pertaining to medical treatment: the first category includes claims of deliberate indifference to a particular inmate's medical needs; the second category consists of "systemic deficiency" claims, which allege "systemic and gross deficiencies in staffing, facilities, equipment, or procedures" at the prison that effectively render "the medical treatment constitutionally inadequate for all inmates." 828 F.3d at 554. Plaintiffs here attempt to cast their claim in terms of the second category. But the Court sees nothing inherently deficient in failing to provide a face-to-face assessment for every case, for the reasons explained above. A policy that consists of providing a single dentist to provide dental care to hundreds or thousands of detainees necessarily delays treatment across the board. But a policy of not providing face-to-face assessments in each case does not necessarily equate with a delay in treatment. The assessment or lack of an assessment does not drive Plaintiffs' claim; rather, the claim turns on the totality of the facts and circumstances surrounding each individual detainee's claim. In short, Plaintiffs' claim amounts to a claim of delay in treatment, and, as the Seventh Circuit held in *Phillips*, "a delay in medical treatment is not a factor that is "either always, or

11

never, significant" and thus "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." 828 F.3d at 555 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The lack of a face-to-face assessment says nothing about whether the ultimate course of treatment violates the Constitution.[6] Accordingly, the Plaintiffs have failed to demonstrate commonality under Rule 23(a).

B. Typicality

This Court's findings concerning commonality apply as well to Rule 23(a)'s typicality requirement. To satisfy the typicality requirement, Plaintiffs must show "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The commonality and typicality requirements of Rule 23(a) tend to merge. *Priddy v. Health Care Services Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) (internal quotation omitted). Generally, a claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [his or] her claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). Although there may be factual distinctions between the claims of the named representatives and those of other class members, the former's claims must share the "same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted).

---

[6] Plaintiffs' own evidence bolsters this point: Exhibit 9, which shows average wait times for dental care, says nothing about face-to-face assessments; rather, it shows average wait times from the date the health service request forms were received to the date of treatment. See [86], pp. 33–45.

Here, Plaintiffs base their claims upon the same course of conduct that affected all members of the proposed class: CCJ's practice of failing to provide a face-to-face assessment for inmates claiming dental pain. But, as in *Smentek*, *Smith*, and *Wrightsell*, Plaintiffs each present a different situation, involving different dental issues, different degrees of pain, different delays, different treatments. Consideration of claims such as Plaintiffs'—seeking money damages for subpar medical care—requires a "highly individualized inquiry"; each Plaintiff's case is different and, therefore, no case is typical. *Smith*, 2008 WL 1995059, at *2; *Wrightsell*, 2009 WL 482370, at *2.

McFields complained that he had a sore throat and swollen gums because of a hole in his tooth; he complained of pain at a level of 7 and received treatment less than a month after he submitted a health service request form. [77], ¶¶ 21–24; [85], p. 109. Brunt, who submitted a health service request form more than two and a half years after McFields, had seen a dentist and received a prescription for pain medication but had not received it; the record does not disclose the nature of Brunt's dental issues. [93-1]. Nor is it clear that the other named Plaintiffs experienced health issues similar to either McFields or Brunt.

Similarly, the Plaintiffs' claims reflect varying wait times for treatment: McFields waited less than a month from his first health service request form; Williams may have waited as long as three months for treatment; and Dixon and Brunt both waited about 60 days for treatment. Additionally, the delay alleged as to Williams, Dixon, and Brunt runs from the date they began to experience dental

13

pain, and not from the date they submitted any health service request form. Indeed, the complaint fails to allege when these Plaintiffs submitted health service forms or when any staff member acted upon those forms; nor does the complaint disclose facts relating to the nature of each Plaintiff's dental issue, the degree of pain each experienced, etc. As a result, the Plaintiffs have failed to demonstrate typicality.

C. <u>Predominance</u>

Plaintiff's certification motion similarly fails on predominance. The purpose of the predominance requirement is to decide if the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Though similar to commonality and typicality, predominance is more demanding than either of those two requirements. *Id.* at 623–24. The driving principle of predominance is "whether the proposed class' claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018). To certify a class, the Court must find not only that common questions of law or fact exist, but that such questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

As explained above, the Court finds that the proffered common question does not appreciably advance resolution of Plaintiffs' claims and that individual issues—the facts and circumstances of each individual detainee's claim—predominate. As a result, the Court denies the motion for class certification on this basis as well.

IV. <u>Conclusion</u>

For the reasons explained above, the Court finds that Plaintiffs have failed to demonstrate commonality and typicality; rather, resolution of Plaintiffs' claim requires a highly individualized, fact intensive inquiry. Nor have Plaintiffs demonstrated that common questions predominate over questions affecting only individual members. Accordingly, the Court finds that class certification is not appropriate and, accordingly, denies Plaintiffs' motion for class certification [84].

Dated: September 24, 2019

Entered:

_____
John Robert Blakey
United States District Judge